Curtis *v.* Hollingshead.

---

### CURTIS ads. HOLLINGSHEAD AND OTHERS.

Under the attachment act, *Rev. Laws,* 355, a creditor of a firm cannot sue out an at-
tachment against one of the firm who may have absconded, for a partnership
debt, if the other partners reside here. But if all the partners have absconded,
then an attachment will lie against them all, as absconding debtors, under the
provisions of the first section. Nor can an attachment issue against a non-resi-
dent partner, if the other partners reside here; but if all the partners reside
abroad, then, under the 27th section, an attachment may issue against all or any
of them, or if dead, then against their non-resident representatives.

This was an application, on the part of the defendant, to quash the writ of attachment issued in this case, and for an order on the sheriff to restore the goods and property attached.

Curtis *v.* Hollingshead

It appeared that on the 16th July last, one of the plaintiffs made an affidavit for bail, against Curtis and his partners, of a debt due from them as partners to the plaintiff. On that affidavit a *capais* was issued out of the Common Pleas, of Hunterdon, and all the defendants, except Curtis, were arrested, and held to bail. On the same day, the same plaintiff made an affidavit against Curtis, as an *absconding* debtor, stating that he, as one of the firm to which he belonged, was indebted to the plaintiffs in precisely the same sum specified in the affidavit for bail ; and as was admitted on the argument for the same debt. On this affidavit, a writ of attachment issued out of this court returnable to this term. By virtue of this writ, the sheriff not only attached all the separate property of Curtis, to the value of five hundred dollars and upwards, but seized and took into his possession all the partnership effects and stock in trade including their books of account, of the firm of W. M. Cade, & Co. that being the firm of which Curtis was a member. It appears, by the sheriff's return, that the partnership property, taken by him, was appraised at four thousand eight hundred dollars ; one third part of which he attached as belonging to Curtis, as one of the partners.

*H. W. Green*, and *S. L. Southard*, for defendant.

*W. Halsted*, for plaintiffs.

The opinion of the court was delivered by

HORNBLOWER, C. J. Among other points raised, and very ably discussed, by the counsel on both sides, it was insisted that this double proceeding against the same defendants, for the same debt, by *capias* out of one court, and by attachment out of another, was vexatious and oppressive ; that though Curtis had not been arrested on the *capias*, yet, by force of our statute, it was a suit against him as effectually as if he had been served with process, and that a plaintiff cannot proceed by *capias* and by attachment at the same time, against the same defendant, for one and the same debt.

It will not be necessary, for the decision of this case, to express any opinion upon the points just mentioned, nor upon a variety of other matters that were incidentally, but elaborately, discussed on the argument. If the writ of attachment which has been issued in this case is not warranted by a sound con-

struction of the attachment act, (*Rev. Laws*, 355) it must be set aside.

To my mind it is very clear that the Legislature have not, by the twenty-seventh section, nor by any other part of that act, exposed the community to the evils that would result from the construction contended for by the plaintiff's counsel. It was argued, that if the statute is susceptible of such a construction, we are bound to adopt it, because, by the thirty-second section we are required to construe it "*in the most liberal manner, for the detection of fraud, the advancement of justice, and the benefit of creditors.*"

Without stopping to inquire whether the construction contended for would be *for the benefit of creditors*, it is sufficient to say it most manifestly would not be, "*for the detection of fraud,*" or "*the advancement of justice,*"—on the contrary, it would open a wide door for the *former*, and in many, if not in most cases, be an entire prostration of the *latter*. But if the construction contended for would be as well for the detection of fraud, and advancement of justice, as for the benefit of creditors, we must not adopt it, unless it is a legal and sound construction; a construction within the spirit of the statute, and the intention of the legislature. We may devise many beneficial amendments to the act, but we must not attempt to engraft them upon the original stock, if entirely of a different character. We must not, we *may* not, by mere construction, adopt principles at war with the great and fundamental doctrines of the common law. We must not legislate by judicial construction.

But in this case, however desirable it might be to extend the remedy, there is no room to do it. The words of the twenty-seventh section, when taken in connection with those of the next preceding section, (and the legislature have connected them, as will presently appear) not only exclude the idea of an attachment against *one* of several joint debtors, or partners, for a joint, or partnership debt, while the other debtors, or partners, are here, but absolutely require a contrary construction to give them *meaning* and *effect*. The very structure of the clause, or section, leads to a different conclusion. It would be an unmeaning and confused jargon, and betray extreme ignorance in the draftsman, if we suppose he meant to give an attachment

against *one* of several joint debtors, or partners, (whether he was a non-resident, or an absconding debtor) for a joint or partnership debt, while the other joint debtors, or partners, were resident in this state.

The first section of the act gives an attachment against an *absconding debtor;* and against no other person. All the rest of the act, to the twenty-fifth section inclusive, relates to, and regulates, the proceedings on *such* attachments. Now it cannot be seriously contended, that under the provisions of the first section, an attachment may issue against *one* of several joint debtors, or partners, for a joint, or partnership debt. If it could, then the twenty-seventh section, even if it was capable of being understood as the plaintiff's counsel contends it should be, is entirely useless. But though the first section does not authorize an attachment against an absconding, joint, or partnership, debtor, for a joint, or partnership, debt, yet it does give an attachment against him for his separate debt; and on such attachment there can be no doubt but his interest in a joint, or partnership, property, subject to partnership debts, (or in other words, what may be due to him on a settlement of the partnership, or joint, concern) may be attached in the hands of his copartners, or joint owners ; and in respect thereof they would be considered, and treated, as garnishees. Nor is there any thing in the first twenty-five sections of the act that relates to *non-resident,* or *foreign debtors*, or that authorizes any attachment against *their* property in this state, either for their individual, or their joint debts. Hence the necessity of a new set of provisions ; and accordingly the legislature, by the twenty-sixth section, extend the remedy by attachment against the property of *debtors* residing *out of* the state. They direct that the property of such debtors shall be taken, proceeded against, and sold, for the payment of their debts in like manner, as nearly as may be, as the property of other debtors is directed to be by the act: *provided*, that instead of the oath prescribed by the first section, the applicant for the writ is to make oath that his debtor is *non resident* in this state.

Now it is observable, that if the legislature had stopped here, this section would have given an attachment, as well against *non-resident*, or foreign, joint debtors, or partners, *if all were absent*,

for their joint, or partnership, debts, as against *non-resident* individuals for their separate debts. But then it might be doubtful whether, under this general provision, an attachment against the property of foreign, or non-resident, partners, for a partnership debt, the separate property of the individual partners could be reached. Again, if the non-resident, or foreign, joint debtors, or partners, should die, leaving heirs, or personal representatives, that is, executors, or administrators, residing abroad, the property in this state, descending to such heirs, or the goods, rights and credits remaining here, could not be attached. Once more, all actions must be brought against *all* the proper parties, and the defendants must be sued by their proper names, or the suit may be abated, or otherwise defeated. But it is often difficult, in the case of non-residence, and especially of foreign partnerships, to ascertain, with precision, the names and number of the individuals composing the firm. *Therefore*, to remove these doubts and difficulties, and to make the remedy more complete and beneficial, the legislature proceed, by the twenty-seventh section, to enact that the writ of attachment (authorized by the preceding section) may be issued against the *separate* or *joint* estate, or *both*, of such non-resident debtors, or partners ; or against the joint, or separate, property of any of them. Not only so, but that it may issue against them " *by their proper name, or names, or by the name or style of the partnership, or by whatever other name, or names, such joint debtors shall be generally known and distinguished* IN THIS STATE; " and still further, the writ may not only so issue against such non-resident, joint, debtors, or partners, or the survivors of them, but if they are dead, and their heirs, executors, or administrators, reside abroad, then against such absent, or non-resident, " heirs, executors, or administrators, or any of them ; " " and the estate so attached, whether it be separate or joint, shall be liable to be sold, or assigned, for the payment of *such joint debt.*" Thus the twenty-seventh section carries out and completes the remedy given by the twenty-sixth section, and removes the doubts and difficulties that might hang around a proceeding by attachment against joint debtors, or partners, under the general terms of that section.

That such was the intention of the legislature, and that when

they passed the twenty-seventh section, they were still legislating, exclusively, on the subject of *non-resident* or *foreign debtors*, is manifest from the peculiar manner in which they have connected that with the preceding section; they terminate the former (the twenty-sixth section) and precede the latter with the words, " *and provided also.*" So that omitting the formal, enacting words, which may be read as in a parenthesis, they constitute but one section, or division of the act.

This construction, or rather plain common sense reading of the statute, restraining the operation of the twenty-seventh section to the case of *non-resident* joint debtors, or partners, when they *all* reside abroad, or are dead, leaving heirs, or representatives, abroad, not only gives a full and satisfactory effect to all its provisions, and introduces a valuable and highly beneficial remedy to creditors of foreign debtors and partnerships, having property, rights and credits, within our jurisdiction, which could not otherwise be reached; but does not involve us in the monstrous, dangerous and oppressive consequences, and legal absurdities, incident to, and indeed inevitable upon, the construction contended for by the plaintiff's counsel. I will only intimate some of the difficulties that meet us upon the plaintiff's doctrine. What will you do with the words, " heirs, executors, and administrators," found in the twenty-seventh section? Surely, the legislature did not mean to say that if joint debtors, or partners, should die, leaving heirs, or having executors, or administrators, *residing here*, a creditor may proceed by attachment against such *present* heirs, executors, or administrators. This would be to introduce a new law of distribution, and be as mischievous in effect, as it would be novel in principle. But besides this, the attachment could not issue without a preliminary affidavit; but what affidavit is to be made in such case? Not that the *heir*, *executor*, or *administrator*, has absconded; such an affidavit could not be made, if *they* were *here*. Would you make oath that the ancestor, or the testator, or intestate, absconded in his life time, and died in foreign parts? But neither the first nor the twenty-sixth section gives any such form of affidavit. The same difficulty would exist if the debtor absconded, taking all his heirs with him, and died abroad, having no personal representatives here. There is no affidavit prescri-

bed, or writ given, to meet such a case. It cannot mean that if the *heirs, executors,* or *administrators, abscond,* then an attachment may issue against them ; for if the debtor dies *here,* they would not be the *heirs, executors* or *administrators,* of *an absconding* debtor.

But if we understand the twenty-seventh section as only intended to extend the *foreign* attachment to the case of *non-resident* joint debtors and partners, when they *all* reside abroad ; and in case of their death, to their *non-resident* heirs or personal representatives, then no such difficulties exist; such *non-resident* heirs, or representatives, would, in legal contemplation, be the debtors, and upon an affidavit that they were *non-resident,* an attachment might issue.

Again—It is perfectly obvious that if the twenty-seventh section is not taken as part of, and in connection with, the twenty-sixth section, then it gives a writ of attachment against joint obligors and partners who may all be resident and present in the state, which will not be pretended. The construction adopted by the plaintiff's counsel, and upon which the attachment in question was issued, would be very dangerous, if not destructive, to all joint, and partnership establishments in the state. Who would invest his capital in a joint, or partnership concern, if the *non-residence* of one of the partners, or his temporary absence, exposed the whole partnership effects, rights and credits, to the controlling and withering influence of an attachment ? A vindictive creditor, or any person claiming to be a creditor, residing here, or *in any part of the world,* if one partner happened to be abroad, might destroy the credit, and ruin the business, of the whole concern. We cannot adopt a construction fraught with such consequences, unless constrained to do so by force of plain and unequivocal enactments to that effect.

But let us look for a moment at the difficulties we have to encounter in the case now before the court. Suppose Curtis, the defendant, should appear and put in bail to the attachment ; there will then be two suits going on against him ; one in this court, and one in the Common Pleas, for the same identical cause of action—for he will be as effectually bound by the judgment that may be rendered in the suit commenced by *capias* in the Common Pleas, as if he, as well as his partners, had been served

Curtis *v.* Hollingshead.

with process.    This would be against the great common law maxim, *nemo debet bis vexari pro eadem causa.*    But would not Curtis, the moment he appeared and put in bail, have a right to plead, in abatement, that there were other joint debtors, or part- ners, who ought to have been sued with him?  There is nothing in the statute to take away such plea.    On the contrary, when the party appears and puts in bail, the attachment is to be set aside, (*Rev. L.* 358, *sec.* 16) and the suit is to proceed in the same manner as if it had been commenced by summons or *capias.* Now the object, at least one of the objects, of an attachment, and a very leading one too, is to compel an appearance.    But why institute a proceeding to compel an appearance, when the moment it is effected, the defendant can defeat the action by a plea in abatement?  But if he cannot plead, in abatement, he may set up a defence on the merits; and suppose a defence is also made in the other action, and there should be contradic- tory verdicts and judgments; which shall prevail—or shall both stand in force, and be executed?    These are only some of the difficulties and incongruities resulting from the plaintiff's construction of the statute.

It was argued, however, by the plaintiff's counsel, that if the twenty-seventh section was struck out of the act, the plaintiff, by force of the first section, might have an attachment against one of several partners, for a partnership debt, to be executed upon his separate property; that each partner is *a debtor*, and his interest in the partnership effects, at least after the debts of the firm are paid, is his separate property, and therefore liable to be attached.    In support of this position, the case of *Chip- man,* 14 *Johns. R.* 214, & 16 *Johns. R.* 102, is referred to.

The judgment of the court, in the case just mentioned, so far as it is founded on general principles, and not on their own stat- ute, is certainly entitled to respect; but admitting that on at- tachment against A. for his separate debt, his interest in a part- nership concern may be attached (a position I am not disposed to question) yet I am not prepared to sustain the doctrine that each partner is *a debtor* to the whole amount of a partnership debt, in such a sense that a creditor of the firm may proceed against one partner by attachment, for a partnership debt, if the rest of the partners are in this state.    In the case of partner-

ships, the firm is the *contracting* party, not the individuals composing the firm; the credit is given to the *firm ;* the partnership, the ideal person, formed by the union of interest, is the legal debtor.    A partnership is considered in law as an artificial *person*, or *being*, distinct from the individuals composing it.    *It* is treated as such in law, and in equity.    *Its* property is first to be appropriated to the payment of *its debts*.    The individual partners are indeed *liable* and bound to the extent of their separate property for the partnership debts.    They may therefore be called *debtors*, but they are only *constructively*, or rather *consequentially*, so ;   their individual liability is a legal consequence ;   it flows from the remedy ;   it is, in some respects, like the case of a husband, who becomes bound for the debts contracted by his wife *dum sola ;* they are not *his debts*, strictly speaking, though he is liable for them, if sued during coverture.    The very affidavit filed in this case shows that the firm of W. M. Cade, & Co. is the *debtor*, and not the defendant in his individual capacity.    An intelligent and honest plaintiff would hardly venture to make affidavit that Curtis was indebted to him in a certain amount, for goods sold and delivered to him, if they had been sold and delivered to W. M. Cade, & Co.    It is true if one partner be sued at law for a partnership debt, he cannot prevent a recovery, unless he pleads in abatement ;   but then that he may successfully plead in abatement, shows it is not his individual debt in such a sense that he may be sued for it alone.    If *he* was the *real, actual, debtor ;* if it was a *debt* contracted by, and due *from him* to the plaintiff, in the strict, legal sense of the term, he could not defeat the action by such a plea.    My opinion is, therefore, that under the attachment act, the creditor of a firm cannot sue out an attachment against one of the firm (who may have absconded) for a partnership debt, if the other partners reside here.    But if *all* the partners *have* absconded, then an attachment will lie against them *all*, as *absconding debtors*, under the provisions of the first section.    Nor can an attachment issue against a *non*-resident partner, if the other partners reside here ;   but if *all* the partners *reside abroad*, then, under the twenty-seventh section, an attachment may issue against *all*, or any of them, or if dead, then against their non-resident representatives.

Morris Canal ads. The State.

More has been said upon this subject than would have been deemed necessary, if it was not supposed that a different construction of the act under consideration has prevailed to some extent at the bar. In the full conviction that the view now taken of the law is correct, I am of opinion that this writ must be quashed, and the property restored to the partners from whom it was taken. But as the question is a new one, this order must be considered as made upon a stipulation by the defendants, not to sue the plaintiffs, the sheriff, or the attorney.

CITED in *Barber* v. *Robeson*, 3 *Gr* 18 ; *Haight* v. *Executors of Bergh*, 3 *Gr.* 184 ; *Brown* v. *Bissett*, 1 *Zab.* 50 ; *Allen* v. *Agnew*, 4 *Zab.* 446 ; *Linford* v. *Linford*, 4 *Dutch.* 116.